IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRISTIAN KENEDY RAMIREZ-RUIZ<br><br>Petitioner,<br><br>v.<br><br>CRAIG LOWE, WARDEN OF THE PIKE COUNTY CORRECTIONAL FACILITY, *et al.*,<br><br>Respondents. | : | 3:26-cv-3155<br>(JUDGE MARIANI) |

**MEMORANDUM OPINION**

Before the Court is a counseled verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Cristian Kenedy Ramirez-Ruiz ("Petitioner"). In the petition, Petitioner alleges that Respondents have deprived him of his physical liberty without adequate procedural protections that the Due Process Clause requires when they detained him "without any notice or opportunity [for] an individualized custody determination." (Doc. 1, ¶ 4). For the reasons discussed more fully below, the petition will be granted, and Respondent Warden of the Pike County Correctional Facility will be ordered to immediately release Petitioner from custody.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Petitioner is a citizen of the Dominican Republic residing in the United States since 2022. (Doc. 1, ¶ 15). He alleges that Respondents are unlawfully detaining him in violation

of the Fifth Amendment's Due Process Clause and seeks his immediate release from custody. (*Id.*, ¶¶ 37-40).

Petitioner alleges on December 11, 2022, he "presented himself at the United States southern border and was paroled into the United States." (*Id.*, ¶ 15). Since his arrival "he has lived and worked in New Jersey and Pennsylvania." (*Id.*, ¶ 16). He alleges he "has never been arrested and has contributed positively to his community." (*Id.*).

On September 22, 2026, Petitioner was seized during a traffic stop in Shamokin, Pennsylvania by a local police officer. (*Id.*, ¶ 1, 17). He alleges the officer "did not state why they stopped him" and asked for his driver's license. (*Id.*, ¶ 17). Petitioner provided the officer with his valid driver's license, and the officer proceeded to review the license in his patrol car. (*Id.*). The officer then returned to Petitioner's vehicle, asked if he had a green card, and Petitioner replied that he did not. (*Id.*). Although Petitioner "was not given a traffic ticket or issued any criminal citation," he was arrested by Shamokin police and soon thereafter "ICE picked him up and have detained him since." (*Id.*). Petitioner alleges that "ICE officials isolated him in a room and demanded that [he] sign paperwork or else they would 'punish' him." (*Id*). He declined to sign and was transferred to the Pike County Correctional Facility where he remains detained to date. (*Id.*).

Respondents do not seriously dispute Petitioner's factual allegations. (Doc. 3). According to DHS Form I-213 (Record of Deportable/Inadmissible Alien), which was created after Petitioner's arrest, on or about December 11, 2022, Petitioner "was encountered by the

United States Border Patrol after entering the United States unlawfully" and "was released with no charging document issued." (Doc. 3-2 at 2). ICE's written narrative on this form states it received a referral from the Shamokin City Police Department after an encounter with Petitioner "during a traffic stop for a moving violation." (*Id.*). "The Shamokin City Police Department notified the ICE ERO Williamsport Sub-office regarding the encounter. ERO personnel conducted record checks, which confirmed RAMIREZ's status as a removable alien. Pursuant to this confirmation, ERO issued a Warrant for Arrest of Alien (Form I-200) to the Shamokin City Police Department, authorizing the subject's detention under delegated 287(g) authority."[1] (*Id.*). Form I-213 also states that Petitioner "is amenable to removal from the United States and will be served a Notice to Appear I-862." (*Id.* at 3).

ICE records also indicate that on September 22, 2026, Petitioner was served with a Notice to Appear (Form I-862) charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled and was placed into removal proceedings. (Doc. 3-3 at 1). Although the Notice to Appear makes clear Petitioner was placed into removal proceedings for the first time on the same day he was arrested and detained by ICE, the exact sequence of events remains unclear. *See id.* ("Following the completion of local processing, custody of RAMIREZ was formally transferred to ERO officers. The subject was then transported to

---

1 Respondents submitted a copy of the Form I-200 (Warrant for Arrest of Alien) generated by ICE following Petitioner's arrest by local police. (Doc. 3-4).

the Williamsport Sub-office for further administrative processing and the commencement of removal proceedings.").

Also on September 22 at approximately 10:02 P.M., Respondents represent that they conducted an initial individualized custody determination for Petitioner and then made the discretionary decision to detain him instead of releasing him on bond. (Doc. 3-5 at 1). According to Petitioner's Form I-286 (Notice of Custody Determination) ICE Deportation Officer Mcelwee checked a box indicating Petitioner would be "Detained by the Department Homeland Security" pursuant to § 1226(a). (*Id.*). The form also contains a stamp stating REFUSED TO SIGN in the portion where detainees can check a box indicating whether they wish to request a custody redetermination before IJ. (*Id.*). Respondents' documentation also shows that Petitioner has no criminal history and has lived in the United States since 2022. (Docs. 3-2, 3-3, 3-4, 3-5).

Petitioner's immigration proceedings recently commenced and, accordingly, he does not have a final order of removal. (Doc. 1, ¶ 1).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## III. ANALYSIS

Petitioner alleges that his detention under 8 U.S.C. § 1226(a) violates his procedural due process rights guaranteed by the Fifth Amendment's Due Process Clause and seeks his immediate release from custody. (Doc. 1, ¶¶ 4, 27-32, 35-40). Specifically, he alleges Respondents deprived him of his liberty without adequate procedural protections that the Due Process Clause requires when they detained him "without any notice or opportunity [for] an individualized custody determination."[2] (*Id.*, ¶ 4). Respondents principally argue in opposition that Petitioner failed to exhaust his administrative remedies when he did not seek custody redetermination before an Immigration Judge ("IJ") before coming to this Court.

---

[2] Although not raised by either party, the Court has jurisdiction to consider the petition. The Court incorporates by reference its prior jurisdictional analyses set forth in similar habeas petitions filed by civil immigration detainees. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025); *see also Richeme v. Warden*, 2026 WL 937546, at *2-3 (M.D. Pa. Apr. 7, 2026).

(Doc. 3 at 5, 6-12). Respondents also argue that "Petitioner's detention does not violate the Fifth Amendment's Due Process Clause." (*Id.* at 5).

### A. Exhaustion of Administrative Remedies.

Respondents argue in opposition that Petitioner failed to exhaust his administrative remedies by not first seeking a custody redetermination before an IJ. Habeas petitioners "are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). However, § 2241 contains no explicit exhaustion requirement making exhaustion under the statute prudential, not jurisdictional, and therefore "the Court may excuse exhaustion where administrative remedies would be futile." *A.J.P.S. v. Benzel*, 2026 WL 3131270, at *3 (D.N.J. Oct. 19, 2026) (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). The Court may also excuse exhaustion "'if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.'" *Espinoza Huerta v. Mullin*, 2026 WL 3217165, at *2 (E.D. Pa. Oct. 27, 2026) (quoting *Dos Reis v. McShane*, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026)).

Courts have excused exhaustion of administrative remedies in similar circumstances as those presented in this case: where the petitioner raises a constitutional challenge to ICE's failure to conduct an individualized custody determination in the instance and seeks

habeas relief prior to seeking a custody redetermination before an IJ.[3] Moreover, Petitioner only raises constitutional claims in his petition and neither the IJ nor the BIA have the authority to hear and adjudicate constitutional claims. *See Basboga*, 2026 WL 3033623, at *3 (requiring exhaustion of due process claim would be futile because neither an IJ nor the BIA "have authority to adjudicate" constitutional claims). For these reasons, the Court finds that Petitioner need not exhaust his administrative remedies by first seeking a custody redetermination before an IJ because doing so under the circumstances would be futile when the "actions of the agency clearly and unambiguously violate statutory or constitutional rights." *Espinoza Huerta*, 2026 WL 3217165, at *2. Accordingly, the Court rejects Respondents' argument that Petitioner must first seek a custody redetermination before an IJ before filing his § 2241 habeas petition with this Court. Exhaustion is not required under these circumstances where Petitioner only challenges ICE's failure to make an individualized custody determination in the first instance.

---

[3] *See, e.g.*, *A.J.P.S.*, 2026 WL 3131270, at *3 (exhaustion of administrative remedies would be futile where "Petitioner challenges ICE's failure to conduct a meaningful individualized custody in the first instance" and "[a] subsequent bond hearing would not remedy the alleged constitutional violation because it would not cure ICE's failure to exercise its discretion when initially deciding to detain Petitioner.") (O'Hearn, J.); *Matos-Ramirez v. Jamison*, 2026 WL 3085462, at *2 (E.D. Pa. Oct. 15, 2026) ("Exhaustion is excused here for two reasons. First, a later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it. Petitioner was detained at a routine ICE check-in, without notice or an opportunity to contest it, and alleges that this violated due process. A later bond hearing cannot cure the initial alleged deprivation of liberty. As such, this remedy would be futile. Second, the record calls into question whether administrative remedies are truly available to Petitioner.") (citation modified) (Scott, J.); *Basboga v. Jamison*, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026) (exhaustion would be futile because petitioner "raises constitutional errors that he claims ICE committed through the process by which it detained him, not the merits of its custody decision" which is an "argument beyond any IJ's authority") (Wolson, J.).

### B. Section 1226(a) and Procedural Due Process.

Having found that exhaustion of administrative remedies would be futile under the circumstances, the Court begins its analysis with § 1226(a), its implementing regulations, and will then proceed to Petitioner's claim that his detention without any individualized custody determination by ICE in the first instance violates his procedural due process rights guaranteed by the Fifth Amendment.

#### 1. Section 1226(a) and its Implementing Regulations.

Immigration authorities may only "detain non-citizens during removal proceedings when Congress has authorized them to do so." *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 554 (D.N.J. 2026). Pursuant to § 1226(a), "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien; and may release the alien" on bond or conditional parole. 8 U.S.C. §§ 1226(a)(1), (a)(2).

"Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). The statute also "permits the Attorney General to release those aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Id.* (quoting 8 U.S.C. § 1226(a)). Section 1226(a) thus

"permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho v. Warden Philadelphia FCI*, 189 F.4th 287, 292 (3d Cir. 2026) (holding mandatory detention without bond under § 1225(b)(2)(A) for noncitizens "who had already entered the United States without inspection and been present for years" and who had no criminal history violates the INA and due process).

"Federal regulations provide that aliens detained under § 1226(a) receive a bond hearing at the outset of the detention." *Jennings*, 583 U.S. at 306 (citation omitted). The "implementing regulations establish a two-step framework for determining whether a noncitizen subject to removal should be detained or released." *A.J.P.S.*, 2026 WL 3131270, at *3. In the first step of the process, "DHS enforcement officials, including ICE agents, make an initial custody determination."[4] *Id.* (citing 8 C.F.R. § 236.1(c)(8)). Section 1226(a)'s implementing regulations govern DHS's initial custody determination and provide, in relevant part:

> (8) Any officer authorized to issue a warrant of arrest *may*, *in the officer's discretion*, *release an alien* not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; *provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding*. Such an officer

---

[4] After DHS makes the initial custody determination and denies release on bond, the second step provides that a noncitizen "may seek redetermination by an Immigration Judge, whose decision is subject to appeal to the Board of Immigration Appeals." *A.J.P.S.*, 2026 WL 3131270, at *3 (citing 8 C.F.R. § 236.1(d)(1)). A detainee may appeal the IJ's bond decision to the BIA and may also seek bond redetermination "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. §§ 1003.19(e), (f), 1003.38.

> may also, in the exercise of discretion, release an alien in deportation proceedings pursuant to the authority in section 242 of the Act (as designated prior to April 1, 1997), except as otherwise provided by law.

8 C.F.R. § 236.1(c)(8) (emphasis added).

The plain language of the regulation (the first step in the "two-step framework"), "leaves no doubt that ICE must make a meaningful individualized custody determination in the first instance."[5] *A.J.P.S.*, 2026 WL 3131270, at *4; *see also Basboga*, 2026 WL 3033623, at *3 ("The regulations therefore provide for an individualized custody determination following arrest, at which point immigration officers consider whether to release a noncitizen based on a showing that he is not a danger to the community or a flight risk."). Indeed, federal district courts within the Third Circuit "have concluded that the Government is required to make an 'individualized custody determination' when it arrests a noncitizen, taking into consideration whether the noncitizens poses a danger to the community and whether the noncitizen is a flight risk." *Saint Cloud v. Jamison*, 2026 WL 3123166, at *4 (E.D. Pa. Oct. 19, 2026) (collecting cases); *see also A.J.P.S.*, 2026 WL

---

[5] DHS regulations "expressly contemplate that an Immigration Judge's review follows an 'initial custody determination' by DHS." *A.J.P.S.*, 2026 WL 3131270, at *4 (citing 8 C.F.R. § 1236.1(d)(1)). As noted by the Court:

> That subsequent review presupposes that ICE has exercised its discretion in deciding whether to detain or release the noncitizen. If ICE could detain noncitizens categorically without any assessment of their individual circumstances, the initial custody determination would become a mere formality, effectively collapsing the two-step framework into a single substantive determination by the Immigration Judge. (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025)). The opportunity to seek a subsequent bond redetermination before an Immigration Judge does not relieve ICE of its independent obligation to meaningfully exercise its discretion when making the initial custody determination.

*Id.*

3131270, at *4 ("Although § 1226(a) affords ICE discretion to detain or release a noncitizen, that discretion necessarily contemplates an individualized exercise of judgment rather than a categorical policy of detention without regard to the noncitizen's particular circumstances."). Accordingly, "[w]hile § 1226(a) does not require ICE to release any particular noncitizen, it requires ICE to meaningfully exercise the discretion Congress conferred." *A.J.P.S.*, 2026 WL 3131270, at *4.

Here, Petitioner challenges only ICE's alleged failure to make any individualized custody determination before depriving him of his physical liberty in alleged violation of the procedural protections that the Fifth Amendment's Due Process Clause requires. Respondents do not dispute that § 1226(a) and its implementing regulations require DHS to make a discretionary individualized determination as to Petitioner dangerousness or flight risk. (Doc. 3 at 6-12). Respondents argue instead that "DHS followed the regulations, namely providing Petitioner with a Notice of Custody Determination regarding its discretionary decision to detain him." (*Id.* at 7). Respondents further claim that "Petitioner's detention does not violate the Fifth Amendment's Due Process Clause." (*Id.* at 5).

**2. <u>The Fifth Amendment's Due Process Clause Requires DHS to Make an Individualized Custody Determination</u>.**

Not only do § 1226(a) and its implementing regulations require DHS to make an initial individualized custody determination justifying continued detention, the Fifth Amendment does as well. "The Fifth Amendment to the U.S. Constitution protects all persons within the United States, including those alleged to have entered illegally, from

being deprived of life, liberty, or property, without due process of law." *Sall v. Sage*, 2026 WL 3259319, at *8 (M.D. Pa. Oct. 29, 2026) (citation modified); *see also Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard."). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

"What process is due is determined by analyzing both the private and governmental interests affected." *Zheng*, 826 F. Supp. 3d at 554 (citing *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976)). *Mathews* requires the Court to weigh three factors to determine what process was due under the circumstances: (1) the "private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail."[6] 424 U.S. at 335. Because Petitioner and his counsel do not allege a

---

6 Federal district courts within the Third Circuit and across the United States have recently held that DHS's failure to make any individualized custody determination in the first instance prior to depriving similarly situated petitioners of their physical liberty violated the procedural protections that § 1226(a), its implementing regulations, and the Fifth Amendment's Due Process Clause require. *See, e.g.*, *A.J.P.S.*, 2026 WL 3131270, at *6 (applying *Mathews* and concluding "[t]he significant deprivation of physical liberty, the risk of erroneous detention absent individualized consideration, and the limited additional burden of requiring ICE to exercise

violation of any applicable statute or regulation, the Court will apply the *Mathews* balancing test to assess his claim that ICE's failure to make an individualized custody determination in the first instance deprived him of his constitutional right to procedural due process.

---

the discretion already conferred upon it establish that Petitioner's detention, absent a meaningful individualized custody determination, violated his procedural due process rights") (Ohearn, J.); *Rangel Mendoza v. Venturella*, 2026 WL 3270029, at *9 (S.D. Wv. Oct. 30, 2026) ("Thus, the Court finds that Respondents' failure to provide an individualized determination—consistent with § 1226(a) and the fundamental features of due process—fails the *Mathews* test and violates the Constitution's Due Process Clause.") (Chambers, J.); *Espinoza Huerta v. Mullin*, 2026 WL 3217165, at *2 (E.D. Pa. Oct. 27, 2026) ("Here, it cannot be said that there was a sufficient individualized custody determination to outweigh [petitioner's] interest in freedom from physical confinement where the detaining agent's review of his case determined only that he had stayed in the United States beyond the permitted period of time, and there is no evidence that he was dangerous or a flight risk.") (Henry, J.); *Adan Araujo v. Officer in Charge, ICE*, 2026 WL 3206909, at *2 (E.D. Pa. Oct. 26, 2026) ("Regardless of whether there exists a valid warrant issued by the Attorney General, detention under 8 U.S.C. § 1226(a) is invalid in this case because there was no individualized custody determination, especially with respect to whether petitioner was a flight risk or danger to the community. Detention without such determination violates petitioner's due process rights.") (Bartle, J.); *Gibson v. Genalo*, 2026 WL 3136379, at *5 (S.D.N.Y. Oct. 20, 2026) (concluding that the Government failed to provide petitioner "with the process he was due prior to detention in the form of an individualized custodial determination and release was the appropriate relief") (collecting cases) (Broderick, J.); *Saint Cloud*, 2026 WL 3123166, at *6 ("On balance, therefore, the *Mathews* factors weigh in favor of finding a due process violation. We therefore conclude that [petitioner's] procedural due process rights have been violated by his detention since September 21, 2026, without being afforded a timely, individualized custody determination.") (Padova, J.); *Lojano Tigre v. Jamison*, 2026 WL 3093160, at *1 n.1 (E.D. Pa. Oct. 14, 2026) ("The balance of the *Mathews* factors, in this matter, weigh in favor of finding that Petitioner's detention violates his due process rights.") (Quiñones Alejandro, J.); *Hernandez Ojeda v. Jamison*, 2026 WL 3074934, at *4 (E.D. Pa. Oct. 14, 2026) ("[T]his Court held that § 1226(a) provides discretion to detain or release a noncitizen while their removal decision is pending, but the agency must exercise that discretion through an individualized custody determination.") (citing *Dos Reis*, 2026 WL 1746649, at *4) (Sánchez, J.); *Basboga*, 2026 WL 3033623, at *6 ("Due Process, however, demands some individual determination and that ICE be able to show its work.") (Wolson, J.); *Hernandez v. Jamison*, 2026 WL 3034460 (E.D. Pa. Oct. 9, 2026) (concluding that DHS's failure to make any initial individualized custody determination violates § 1226(a) and due process warranting release from custody) (Beetlestone, C.J.); *Camara v. Jamison*, 2026 WL 3034346, at *5 (E.D. Pa. Oct. 8, 2026) ("In short, all the *Mathews* factors weigh in favor of granting the Petition because [petitioner] has been detained without a bond hearing or an individualized custody determination in contravention of his due process rights.") (Hodge, J.); *Melendez-Guzman v. Jamison*, 2026 WL 2983704, at *5 (E.D. Pa. Oct. 5, 2026) (holding petitioner's "due process rights were violated by his detention without a pre-detention individualized custody assessment") (Rufe, J.).

### a. The Private Interest at Stake

At the first step of the *Mathews* test, the Court concludes that Petitioner has a protected liberty interest in remaining free from physical confinement and that his liberty interest is weighty and significant. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting "the most elemental of liberty interest—the interest in being free from physical detention."). "Freedom from physical confinement 'lies at the heart of the liberty that [the Due Process] Clause protects.'" *Matos-Ramirez*, 2026 WL 3085462, at *3 (quoting *Zadvydas*, 533 U.S. at 690). It is well-settled "that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." *Hamdi*, 542 U.S. at 530 (citation modified). Accordingly, the Court first finds that Petitioner has a weighty and significant protected liberty interest in being free from physical confinement and that interest is even stronger after Respondents released him into the United States on parole in 2022.[7]

### b. The Risk of Erroneous Deprivation

Second, the lack of an initial individualized custody determination here poses a significantly high risk of erroneously depriving Petitioner of his liberty. *See Buele Morocho*, 189 F.4th at 307 (risk of erroneous deprivation of liberty remains high in "the absence of an

---

[7] Petitioner argues he has an additional and continuing protected liberty interest, claiming that since DHS released him on parole in 2022 following his unlawful entry, that "release on parole creates a protected interest in continued liberty and an implicit promise that the individual may remain free so long as he complies with the conditions of release." (Doc. 4 at 3). The Court agrees with Petitioner and the Courts who have considered this issue and finds that Petitioner's liberty interest "is even stronger given that Petitioner was previously detained and released on conditional parole." *Matos-Ramirez*, 2026 WL 3085462, at *3 (citing *Medina v. Jamison*, 2026 WL 2742071, at *5 (E.D. Pa. Sept. 16, 2026)).

opportunity for a neutral decisionmaker to assess" whether the noncitizen is a danger to the community or a flight risk); *see also A.J.P.S.*, 2026 WL 3131270, at *5 ("The second *Mathews* factor likewise weighs heavily in Petitioner's favor because the absence of an individualized custody determination creates a substantial risk that a noncitizen will be detained without adequate consideration of whether detention is warranted.") (collecting cases); *Hernandez Ojeda*, 2026 WL 3074934, at *3 (concluding that "the risk of erroneous deprivation is high when ICE detains a person without identifying why *that* person presents a danger of flight risk").

Here, Petitioner "received no notice or process prior to detention" and "the burden of providing additional procedural safeguards, such as a pre-deprivation hearing or evaluation, would be low." *Matos-Ramirez*, 2026 WL 3085462, at *3. While Respondents argue that the completion of the DHS Form I-286 (Notice of Custody Determination) is sufficient for the Court to conclude that DHS officials made an individualized custody determination and made the discretionary decision to detain Petitioner, nothing contained on Petitioner's custody determination form supports that conclusion. (Doc. 3-5 at 1). Indeed, nothing in the record allows this Court to reasonably infer that Petitioner received an individualized custody determination, and Courts within the Third Circuit have rejected Respondents'

arguments that the Form I-286 is sufficient in itself to show that ICE exercised its discretion and made an individualized custody determination as to dangerousness or flight risk.[8]

The Court agrees with the decisions cited herein and similarly concludes that nothing in Petitioner's Form I-286 shows that ICE made any individualized custody determination supporting continued detention. Although "the Form I-286 establishes that ICE purportedly recorded a decision to detain Petitioner, it does not establish that the decision resulted from an individualized assessment of his circumstances." *A.J.P.S.*, 2026 WL 3131270, at *5; *see also Basboga*, 2026 WL 3033623, at *6 ("Due Process, however, demands some individual determination and that ICE be able to show its work.").

In this matter, Respondents fail to "identify *any* evidence whatsoever demonstrating that ICE actually considered Petitioner's individual circumstances before deciding to detain to him."[9] *A.J.P.S.*, 2026 WL 3131270, at *6. And the "mere existence of a custody

---

[8] *See, e.g.*, *A.J.P.S.*, 2026 WL 3131270, at *5 (rejecting respondent's argument "that the Form I-286 alone establishes that ICE made an individualized custody determination because the box for detained is checked" and finding "[t]here is absolutely nothing on the Form I-286 demonstrating that ICE conducted any individualized custody determination"); *Basboga*, 2026 WL 3033623, at *6 ("The I-286 Notice of Custody Determination Form also does not qualify as an individualized determination. That form states only that ICE detained [petitioner] pursuant to Section 1226(a) and offers him the opportunity to request a bond hearing."); *Saint Cloud*, 2026 WL 3123166, at *4 (finding "there is no indication in the record that the Government has yet made any such individualized custody determination" and the "Notice of Custody Determination does not include any explanation of the Government's rationale for detaining him, stating only that his detention was 'pursuant to the authority section [1226 of the INA] and part 236 of title 8, Code of Federal Regulations.'").

[9] To the extent Respondents argue they made an individualized determination based on their finding that Petitioner was present in the United States without being admitted or paroled, "[r]eliance on status alone amounts to a per se determination that comports not with 1226(a), but with the Government's desired policy of detention." *Dos Reis*, 2026 WL 1746649, at *4 (citation modified); *see also Lopez-Abello v. Jamison*, 2026 WL 2981935, at *2 (E.D. Pa. Oct. 5, 2026) ("I agree with many of my colleagues that detention without an individualized custody review violates due process, and that a determination of an individual's presence in the United States without lawful status is insufficient to meet that threshold") (collecting cases).

determination form, without more, does not establish that ICE meaningfully exercised its discretion." *Id.* Accordingly, the Court concludes that the risk of erroneous deprivation of liberty remains where, as here, DHS failed to make any meaningful individualized custody determination in the first instance before depriving Petitioner of his liberty. See *Saint Cloud*, 2026 WL 3123166, at *5 (finding "under the circumstances presented, where no individualized custody determination has yet been made, the risk of erroneous deprivation is high").

**c. <u>The Government's Interest</u>**

At the third step in the *Mathews* balancing test the Court must consider the Government's interest in detaining Petitioner without first conducting an individualized custody determination. The Government has an interest in enforcing immigration law and in detaining noncitizens pending removal to ensure their appearance "at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690; *see also Hernandez Ojeda*, 2026 WL 3074934, at *3 ("As to the third *Mathews* factors, the Government has an interest in enforcing immigration law.").

While the Court finds that the Government interests are significant, simply "requiring the Government to conduct individualized custody determinations would impose minimal burden." *Basboga*, 2026 WL 3033623, at *7. Indeed, "requiring ICE to meaningfully assess whether a particular noncitizen presents a danger or flight risk imposes little additional burden because ICE is already responsible for making an initial custody determination

under the regulatory framework." *A.J.P.S.*, 2026 WL 3131270, at *6; *see also Hernandez Ojeda*, 2026 WL 3074934, at *2 (recognizing that "ICE must abide by the statute and regulations when they are enforcing immigration laws, and requiring ICE to do so is not a burden on the Government"). Moreover, Respondents fail to identify any facts "suggesting that Petitioner's detention was necessary to advance either interest," nor have they "demonstrated that conducting an individualized assessment would impose an undue administrative burden." *A.J.P.S.*, 2026 WL 3131270, at *6. And Respondents' own documentation reveals that Petitioner has no criminal record, and they do not claim that Petitioner presents a danger the community or poses a flight risk if released. (Docs. 3, 3-3).

Balancing the *Mathews* factors, the Court concludes they weigh decisively in Petitioner's favor. Considering the significant deprivation of physical liberty, "the risk of erroneous detention absent individualized consideration, and the limited additional burden of requiring ICE to exercise the discretion already conferred upon it," these factors taken together establish that "Petiitioner's detention, absent a meaningfully individualized custody determination, violated his procedural due process rights." *A.J.P.S.*, 2026 WL 3131270, at *6. Accordingly, the Court will grant the petition because ICE's failure to make any individualized custody determination before depriving Petitioner of his physical liberty does

not comply with the procedural protections that § 1226(a), its implementing regulations, and the Fifth Amendment's Due Process Clause require.[10]

### C. Release is the Appropriate Remedy.

Finally, the Court considered the appropriate remedy for Petitioner's deprivation of liberty without adequate procedural protections that our Constitution requires. When presented with similar facts and circumstances, Courts within the Third Circuit have concluded that the appropriate habeas remedy is release, rather than ordering ICE to again attempt to make a pre-deprivation individualized custody determination or directing respondents to provide the petitioner with a custody redetermination before an IJ. *See, e.g.*, *A.J.P.S.*, 2026 WL 3131270, at *4 n.3 (finding that "ordering a bond hearing before an Immigration Judge would not adequately remedy the constitutional violation" and that "permitting ICE to make an initial determination only after Petitioner has already been subjected to detention for a significant period of time without the requisite process" would not "adequately remedy the constitutional deprivation identified here"); *Basboga*, 2026 WL 3033623, at *5-7 (ordering release when "[t]he record before me demonstrates that ICE did

---

[10] Although Respondents take issue with Petitioner's failure to request an individualized custody redetermination before an IJ, the Court has excused exhaustion and any subsequent custody redetermination before an IJ does not cure ICE's failure to provide Petitioner with an individualized custody determination in the first instance. *See A.J.P.S.*, 2026 WL 3131270, at *6 n.5 (finding "when ICE fails to undertake that initial assessment, the availability of subsequent review" by an IJ "does not eliminate the risk of an erroneous deprivation of liberty"); *see also Rangel Mendoza*, 2026 WL 3270029, at *7 (noting that although the petitioner "did not request review—intentionally or not—the initial custody determination was his opportunity to be heard" prior to his deprivation of liberty).

not make the required individualized determination about" petitioner and concluding that "a bond hearing before an IJ" is "not enough to cure [ICE's] initial failure"); *Saint Cloud*, 2026 WL 3123166, at *5 (ordering release and noting "the promise of a bond hearing in the future does nothing to guard against unwarranted deprivation of a noncitizen's liberty in the days or week proceeding that hearing.). The Court finds these decisions persuasive and will similarly conclude that release is the only just and appropriate remedy under the circumstances presented in the petition.

Petitioner's request for fees and costs under the Equal Access to Justice Act will be held in abeyance pending the receipt of a fee petition. *Michelin v. Warden Moshannon Valey Corr. Cent.*, 169 F.4th 418 (3d Cir. 2026) (allowing fees under EAJA in immigration habeas proceedings under 28 U.S.C. § 2241).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted. Respondents will be directed to immediately release Petitioner Cristian Kenedy Ramirez-Ruiz from the custody of the Warden of the Pike County Correctional Facility and file an affidavit or declaration pursuant to 28 U.S.C. § 1746 confirming that Petitioner has been released from custody.

The Court will further temporarily enjoin Respondents from re-arresting and re-detaining Petitioner for a period of 7 days to ensure the habeas remedy is effective. If Respondents elect to later re-arrest and re-detain Cristian Kenedy Ramirez-Ruiz under §

1226(a), the Respondents must first comply with their own regulations and provide Cristian Kenedy Ramirez-Ruiz with an individualized initial custody determination and, if he is denied bond, Respondents shall provide Petitioner with notice and an opportunity to be heard at a timely individualized custody redetermination where an IJ will assess whether he is a danger or flight risk. A separate Order follows.

Robert D. Mariani
United States District Judge